IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

Ft. Lauderdale Division

CASE NO. 00-6025-CIV-MIDDLEBROOKS

ADVOCATES FOR THE DISABLED, INC.,      Magistrate Judge Bandstra
a Florida not-for-profit corporation, PETER
SPALLUTO, individually, and ERNST
ROSENKRANTZ, individually,

    Plaintiffs,

v.

SEA CASTLE RESORT MOTEL
PARTNERSHIP, a Michigan General Partnership,
and MICHELE BROWNELL, General
Manager of Sea Castle Resort Inn, and
LANCASTER SEA CASTLE RESORT, LTD.,
a Florida Limited Partnership,

    Defendants.
_____/

## MOTION TO DISMISS AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant, LANCASTER SEA CASTLE RESORT, LTD. ("LANCASTER"), through its undersigned counsel and pursuant to Fed. R. Civ. Pro. 12(b)(6), respectfully moves this Court for entry of an Order of Dismissal of the Second Amended Complaint as to LANCASTER, and as grounds in support would state:

PROCEDURAL HISTORY

Plaintiffs, ADVOCATES FOR THE DISABLED, INC., PETER SPALLUTO and ERNST ROSENKRANTZ ("ADVOCATES"), have brought suit against, LANCASTER, for injunctive relief, attorney's fees and costs under the Americans with Disabilities Act, 42 U.S.C. §12181, *et seq.*

("ADA"). ADVOCATES allege that a place of public accommodation, the Sea Castle Resort Inn ("Sea Castle") located in Pompano Beach, Florida, is not accessible to and usable by the disabled, as required by Title III of the ADA. As such, ADVOCATES claim they have been discriminated against "and will continue to suffer direct and indirect injury as a result of the Defendant's discrimination until Defendant is compelled to comply with the requirements of the ADA." (Second Amended Complaint, Paragraph 6)

ADVOCATES originally filed this action on January 7, 2000, against a Michigan general partnership, the SEA CASTLE RESORT PARTNERSHIP ("PARTNERSHIP"), as the only defendant. After ADVOCATES took no action in the cause for nearly four months, on April 5, 2000, this Court entered an Order to Show Cause why the case should not be dismissed for lack of prosecution. ADVOCATES replied on April 14, 2000, claiming difficulties obtaining service over PARTNERSHIP, and contemporaneously moved to amend their Complaint to add MICHELE BROWNELL as a party defendant.[1] Prior to ADVOCATES's filing of their April 18, 2000 Amended Complaint to join BROWNELL as a party defendant, PARTNERSHIP sold and conveyed the subject business to an unrelated third party, LANCASTER.

As PARTNERSHIP no longer owned the business, and the injunctive relief available under Title III of the ADA was obviously inapplicable as to PARTNERSHIP, it moved to be dismissed

---

[1] MICHELE BROWNELL, is not a proper party defendant. Her inclusion in the suit, as more particularly argued in BROWNELL's Motion to Dismiss, is in error. ADVOCATES named BROWNELL, an *employee* of the Sea Castle, to create an entity for service after their efforts to serve PARTNERSHIP failed.

from the instant action. ADVOCATES opposed PARTNERSHIP's efforts to be dismissed, and on July 5, 2000 filed a Memorandum in opposition to PARTNERSHIP's Motion.[2] However, on October 3, 2000, ADVOCATES relented and voluntarily dismissed PARTNERSHIP from the instant action. On November 8, 2000, this Court entered an order granting ADVOCATES' Motion to Amend First Amended Complaint to add LANCASTER as a defendant. The Second Amended Complaint was deemed filed as of September 6, 2000.

In the period following the sale of the subject property from PARTNERSHIP to LANCASTER, and prior to being served with process, LANCASTER instituted and completed certain improvements and modifications to the subject property which eliminated barriers to disability access ("Barrier Removal Plan"). The actions by LANCASTER involved substantial modifications to its disabled parking area, improving van accessible spaces, and access aisles. It installed signs identifying disabled parking spaces and created a 36" wide accessible path and route of travel. It eliminated barriers to the swimming pool area created by a pool gate which was not closed-fist operable.

LANCASTER also renovated one of the guest rooms for use by wheelchair bound guests. Doors and other access points were confirmed to be of appropriate width, hardware within the room

---

[2]ADVOCATES' Memorandum of Law in opposition to the position of the PARTNERSHIP is revealing. They argued that although PARTNERSHIP did not own, lease or operate the facility, as plainly required by the Act— and obviously needed in order to effect the injunctive relief requested by ADVOCATES— PARTNERSHIP was still, somehow, liable for ADVOCATES' attorneys fees and costs. July 5, 2000 Memorandum in Opposition to PARTNERSHIP's Motion to Dismiss.

was replaced to ensure ADA compliant "closed-fist" operation, and a ramp allowing wheelchair access to the room was constructed. As set forth in the Affidavit of Thomas Gronemeier, the managing partner, this plan was instituted and completed by LANCASTER prior to being served with ADVOCATES' Second Amended Complaint[3]. *See* Affidavit of Managing Partner attached as Exhibit "A".

Despite a delay of over ten months from their initial filing, and a change in ownership of the property which Plaintiffs acknowledge, the Second Amended Complaint is bereft of any allegations as to the status of the property or ADVOCATES' alleged denial of access and use since LANCASTER assumed ownership. Specifically, ADVOCATES has not made any allegations that they visited the property since the March 10, 2000 change in ownership and were discriminated against and/or denied access to the property so as to give rise to a claim under the ADA. ADVOCATES allege only that "he (Spalluto) has been to the property prior to the filing of this action and desires to visit the property again to use the goods and services available at the property." [emphasis added] (Plaintiff's Second Amended Complaint, Paragraph 6h) In short, after the initial visit which preceded the filing of the original Complaint in January, 2000, ADVOCATES never again revisited the property to determine whether the factual allegations made had evidentiary

---

[3] In the event this Court determines LANCASTER's motion raises issues outside the scope of the instant Motion, it would request the Court consider the instant Motion as a Motion for Summary Judgment and review the accompanying Affidavit under standards governing the grant of summary judgment. *See,* Fed. Rules Civ. Proc. 12(b)(6), *Geiger v. U. S.*, 707 F. 2nd 157. (Court may treat Motion to Dismiss as a Summary Judgment, thereby requiring affidavits supporting factual allegations.)

support. Given the elapsed time and change in ownership of the property, ADVOCATES were and are required to do so under the Federal Rules of Civil Procedure.

ADVOCATES' Second Amended Complaint is also facially inadequate, and contains almost no predicate factual allegation which could ground a claim for relief. Under the subheading "THE INSTANT CLAIM," and where ADVOCATES list the allegations ostensibly setting forth their factual basis for relief, a conspicuous void appears in the pleading.

Paragraphs 15 through 17 purport to contain the entirety of ADVOCATES' factual allegations and state:

> 15. Defendant has discriminated against the individual and corporate Plaintiffs by denying them access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C 12181 et seq., and 28 CFR 36.302 et seq. as described below.
>
> 16. Defendant has discriminated and is discriminating against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities as described below by January 26, 1992 (or January 26, 1993 if defendant has 10 or fewer employees and gross receipts of $500,000.00 or less):
> ***************************** [sic]
>
> 17. The discriminatory violations described in paragraph 16 are not an exclusive list of the Defendant's ADA violations. Plaintiff requires an inspection of the Defendant's place of public accommodation in order to determine all of the discriminatory acts violating the ADA.

As can be seen from Paragraphs 15 through 17 of ADVOCATES' Second Amended Complaint, ADVOCATES have failed to list any predicate facts establishing a violation of the ADA, instead listing only asterisks where the factual allegations presumably are "plugged in" to their boiler plate Complaint. The pleading defect is substantive, and the Second Amended Complaint must

therefore be dismissed for failure to state a cause of action upon which relief may be granted pursuant to Fed. R.Civ. P. 12(b)(6).

## DISCUSSION OF AUTHORITY

It is a fundamental principle of pleading that the complaint, to be sufficient, must allege some predicate facts, as distinguished from legal conclusions which, if proved, would establish a cause of action for which relief may be granted. Fed R. Civ. Pro. 8(a). Moreover, for purposes of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like all other averments of a material matter. Fed R. Civ. Pro. 9(f).

Although ADVOCATES state that "Defendant has discriminated and is discriminating against the Plaintiff in violation of the ADA..." (Plaintiffs Second Amended Complaint, Paragraph 17), as shown above, no predicate facts are alleged from which a legal conclusion can be drawn to support the allegation. The Second Amended Complaint is silent with respect to the nature or type of barriers to access alleged to have been suffered by ADVOCATES, and where such allegations might appear, only asterisks are shown. Fed. R. Civ. Pro. 8(a) provides that, "A pleading which sets forth a claim for relief. . .shall contain a short plain statement of the grounds upon which the court's jurisdiction depends [and]. . .a short and plain statement of the claim showing that the pleader is entitled to relief." ADVOCATES' Second Amended Complaint merely concludes that "Defendant has discriminated. . ." (Plaintiffs' Second Amended Complaint, Paragraphs 15, 16), and without alleging any factual predicate which could support that legal conclusion. This is clearly insufficient under the Federal Rules of Civil Procedure.

Perhaps most critically, while the Second Amended Complaint alleges that defendant(s)

"visited the property" (paragraphs 6e, 6f), the pleading fails to state the date or timing of the visit, or any relevant circumstances pertaining thereto. As a result, the time period that the damages were allegedly sustained cannot, as to defendant, LANCASTER, be ascertained. Fed. R. Civ. Pro. 9(f) states that averments as to time and place are material for purposes of testing the sufficiency of a pleading. This is especially true in the instant case.

The new owner of this property, LANCASTER, undertook and completed material improvements and renovations by way of a Barrier Removal Plan. Yet, in the ten months since ADVOCATES filed their original Complaint, against a different owner of the property, they have, apparently, not endeavored to even once revisit the property to determine whether the injunctive relief which they previously sought might still be appropriate. The effect of failing to allege the date of the "visit" wherein Plaintiffs assert that they were damaged is that the current owner, LANCASTER, cannot reasonably determine what allegations of the Second Amended Complaint are directed against it, and which allegations might be directed against the prior owner, PARTNERSHIP, no longer a party to the suit. Additionally, it compels LANCASTER to answer and defend an action based on allegations which are, as to LANCASTER, moot. As a result, the Second Amended Complaint is so vague, indefinite, and uncertain as to LANCASTER such that a response is virtually impossible.

The defense of failure to plead material facts regarding time and place can be raised by a Motion to Dismiss. See, Bankest Imports, Inc. v. ISCA Corp., 717 F.Supp. 1537 S.D.Fla.1989 Under the facts of Bankest, which involved a breach of contract, this court found that although a claimant was not required to plead time and place with particularity, in order to withstand motion

to dismiss, a more definite statement regarding time and place was required. In the case *sub judice*, there is but a single "event" (ADVOCATES' visit to the property) giving rise to their claim, yet, for the reasons set forth above, the timing of that single "event" must be pled to ensure the propriety of involving LANCASTER in the action, LANCASTER's ability to adequately respond to the allegations directed against it and to insure ADVOCATES have fulfilled their responsibilities under the Federal Rules with respect to the filing and maintenance of factually supported claims.

## CONCLUSION

ADVOCATES Second Amended Complaint, on its face, fails to state a claim upon which relief may be granted. Essential, substantive factual allegations, alluded to in Paragraph 16, are non-existent. As LANCASTER has not received notice of what factual allegations give rise to Plaintiffs' cause of action, LANCASTER cannot respond to the Second Amended Complaint. Since there are insufficient allegations of predicate fact, no proper cause of action has been stated, and the Second Amended Complaint must be dismissed.

Finally, ADVOCATES' failure to indicate the material facts of the date of the visit wherein they allege to have been discriminated against renders the instant claim insufficient as a matter of law. The timing of the alleged violations of the ADA is critical to the case at bar. ADVOCATES' claim against LANCASTER is, in actuality, ADVOCATES' claim against the prior owner, PARTNERSHIP. Absent sufficient, supportable allegations directed to the new owners, LANCASTER is not responsible for an injury allegedly suffered under prior ownership, and can only respond to those allegations relating to a viable claim of alleged discrimination and requisite injury *when LANCASTER was the owner*. As such, the requirement that such material information be plead

is self-evident and ADVOCATES should not be relieved of their responsibility under the Federal Rules.

WHEREFORE, for the foregoing reasons, Defendant, LANCASTER, respectfully requests this Court enter an order dismissing the Second Amended Complaint as to LANCASTER, or in the alternative, treat the foregoing motion as one for summary final judgment and enter a Final Summary Judgment in its favor, and for all other such relief as this Court deems just and proper, including its reasonable attorney's fees and costs incurred.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 17th day of November, 2000, a true and correct copy of the foregoing was mailed to Lawrence A. Fuller, Esq., Fuller, Mallah & Associates, Attorneys for Plaintiff, 1111 Lincoln Road, PH 802, Miami Beach, Florida 33139.

DUKE, MULLIN & GALLOWAY, P.A.
Attorneys for Defendant BROWNELL
1700 East Las Olas Boulevard, PH-1
Fort Lauderdale, Florida 33301
(954) 761-7200 Telephone
(954) 761-1573 Facsimile

By: _____
Amy J. Galloway, Esq.
Florida Bar No. 581429
Michael P. Hamaway, Esq.
Florida Bar No. 0081302

G:\CLIENTS\1224\01\MDismiss.Lancaster.wpd

UNITED STATE DISTRICT COURT<br>
SOUTHERN DISTRICT OF FLORIDA<br>
FT. LAUDERDALE DIVISION<br>
CASE NO. 00-6025-CIV-MIDDLEBROOKS<br>
MAGISTRATE JUDGE: BANDSTRA

ADVOCATES FOR THE DISABLED,
INC., a Florida not-for-profit corporation,
PETER SPALLUTO, individually, and
ERNST ROSENKRANTZ, individually,

      Plaintiffs,

vs.

SEA CASTLE RESORT MOTEL
PARTNERSHIP, a Michigan General
Partnership, and MICHELE BROWNELL,
General Manager of Sea Castle Resort Inn,

      Defendants.
_____/

## AFFIDAVIT IN SUPPORT OF
## MOTION TO DISMISS SECOND AMENDED COMPLAINT

STATE OF FLORIDA

COUNTY OF BROWARD

  BEFORE ME, the undersigned authority, personally appeared THOMAS GRONEMEIER, and who, being first duly sworn, on oath deposes and says:

  1. I am above the age of 18, fully competent to testify, and have personal knowledge of the facts contained herein.

  2. I am the managing partner of the Lancaster Sea Castle Resort, Ltd., a Florida Limited Partnership ("Lancaster Sea Castle"), which owns and operates the Sea Castle Resort Motel ("Sea Castle").

3. On March 10, 2000, Lancaster Sea Castle purchased the Sea Castle. Prior to the purchase, our partnership had no ownership interest in or management involvement with the Sea Castle.

4. When we assumed ownership of the Sea Castle, I began carrying out certain improvements, including improvements to make the premises accessible to disabled guests. I undertook this improvement plan with no knowledge of any lawsuits or complaints from any disabled individual or group.

5. As part of the planned improvements to our small "Mom and Pop" facility, I contracted with Peters Home Care to make reasonable and workable improvements for disability access at the Sea Castle Resort. In addition I also had our staff carry out some of the improvements.

6. Specifically, pursuant to my plan to make the Sea Castle accessible to disabled, wheelchair-bound guests, I supervised certain construction and modifications on the subject property including, but not limited to:

   a. The creation of additional disabled parking spaces, including van accessible spaces and spaces with access aisles appropriately marked;
   b. Installation of signs identifying disabled parking spaces;
   c. Creation of an accessible path and route of travel 36 inches wide from the disabled parking spaces into the motel;
   d. Elimination of barriers to the swimming pool created by pool gate lock which was not closed-fist operable; and
   e. Remodeling of an existing guest room to make it wheelchair accessible, including installation of a ramp, lowering of the bathroom sink, installation of hardware to ensure ADA compliant "closed-fist operation" and insuring the doors and other access points were wide enough to accommodate wheelchair entry and maneuverability.

7. This plan was started in April of this year and completed by May 24, 2000, well

before service of process of the Second Amended Complaint was made on Lancaster Sea Castle on October 7, 2000.

    FURTHER AFFIANT SAYETH NAUGHT.

                                                     THOMAS GRONEMEIER

    SWORN TO and subscribed before me on the 16th day of November, 2000 at the County and State last aforesaid.

Personally known   ✓
Provided Indentification ____
Type of Identification
_____

                                                 Notary Public Signature

My commission expires:

                                                 Printed or Typed Name of Notary Public

G:\CLIENTS\1224\01\Gronemeier.aff.wpd



Kimberly S. Brizendine
Commission # CC 731056
Expires April 6, 2002
BONDED THRU
ATLANTIC BONDING CO., INC